**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond Francis BAYERLE,
Defendant–Appellant.**

No. 89–5166.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1989.

Decided March 9, 1990.

Domenic Ralph Iamele, Levy & Iamele, argued, Baltimore, Md., for defendant-appellant.

Miriam Krinsky, argued, Breckinridge L. Willcox, U.S. Atty., Gregory Welsh, Asst. U.S. Atty., on brief, Baltimore, Md., for plaintiff-appellee.

Before RUSSELL and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Dr. Raymond Francis Bayerle pleaded guilty to a variety of federal charges, including conspiracy to distribute dilaudid (hydromorphone) and dolaphine (methadone) in violation of 21 U.S.C. § 846. On appeal he challenges the sentence imposed for the drug offenses on several grounds. We conclude that the district court's refusal to depart downward is not appealable, and we see no merit in Bayerle's other assignments of error. Accordingly, we dismiss part of the appeal and otherwise affirm the district court judgment.

I

Bayerle was a licensed physician in Maryland when, according to the stipulated facts in Bayerle's plea agreement, he sold completed prescriptions for dilaudid and dolaphine. The purchasers were coconspirators who used the prescriptions to buy drugs for resale. Bayerle illegally prescribed over 37,000 tablets in this manner from January 1987 to September 1988. For these services he received first $1 and later $2 per tablet.

Because Bayerle's offenses continued until after November 1, 1987, his sentence is subject to the guidelines promulgated by the United States Sentencing Commission. The guideline range for Bayerle's offenses is 121 to 137 months.

Bayerle contends that the district court should have departed downward from the guideline range. He relies on 18 U.S.C. § 3553(b) and two policy statements in the *Guidelines Manual* as the basis for his argument. Section 3553(b) directs a sentencing court to depart from the guideline range when the court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission ... that should result in a sentence different from that described." Section 5K2.0, a policy statement in the *Guidelines Manual,* introduces in turn a nonexhaustive list of factors which "may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge." One such factor is the "diminished capacity" of the defendant, defined by § 5K2.13.

According to Bayerle, the sentencing court should have imposed a sentence below the guideline range because he presented evidence of emotional illness, which he claims contributed to his illegal behavior and hence diminished his capacity within the meaning of § 5K2.13. The district court's error under this view amounts to one of fact. Bayerle reads § 3553(b), in conjunction with § 5K2.13, to require a downward departure whenever there is sufficient evidence of diminished capacity. The district court, however, concluded that "diminished capacity ... is not, in my opinion, a very good reason to dispense drugs. I think you had the capacity to understand what you were doing. That's what all the doctors said, what all the psychiatrists said...." The district court based its finding about Bayerle's capacity on the report of an examination conducted at a federal correctional institution. The report concluded that "[a]t the time of the offense Dr. Bayerle was able to appreciate the nature and quality of his actions." The court

imposed a sentence at the lower end of the guideline range, 121 months.

The government argues that a court's refusal to depart downward from the guideline range is not appealable and that, alternatively, the court did not err in refusing to depart.*

## II

Recently, seven circuits have decided that refusals to depart downward from the guideline range are not appealable. *United States v. Tucker*, 892 F.2d 8 (1st Cir. 1989); *United States v. Colon*, 884 F.2d 1550 (2d Cir.1989); *United States v. Denardi*, 892 F.2d 269 (3d Cir.1989); *United States v. Buenrostro*, 868 F.2d 135 (5th Cir.1989); *United States v. Draper*, 888 F.2d 1100 (6th Cir.1989); *United States v. Franz*, 886 F.2d 973 (7th Cir.1989); *United States v. Fossett*, 881 F.2d 976 (11th Cir. 1989). Some of the opinions reason that the courts of appeals lack jurisdiction to entertain appeals from refusals to depart. Others rest this decision on the statutory limitations of a defendant's right to appeal. *Compare Franz*, 886 F.2d at 981 n. 8; *Denardi*, 892 F.2d at 272 (no jurisdiction to review), *with Fossett*, 881 F.2d at 978–79; *Colon*, 884 F.2d at 1552–56 (statute confers no right to appeal).

 Title 28, § 1291 of the United States Code confers jurisdiction on us of appeals from final orders of district courts. A sentence is a final order. We therefore have jurisdiction to consider the district court's sentencing order in light of the statute governing a defendant's appeal. *Cf. Bell v. Hood*, 327 U.S. 678, 680–83, 66 S.Ct. 773, 774–75, 90 L.Ed. 939 (1946). In any event, the reasons for denying review are essentially the same under either jurisdictional or statutory theories. Because we are persuaded by the sound precedent that denies review of refusals to depart downward, we find it unnecessary to reiterate in detail the reasons our colleagues in

other courts of appeals have marshalled to reach this result.

Title 18, § 3742 of the United States Code gives the specific circumstances under which a defendant may appeal a sentence:

> (a) *Appeal by a defendant.*—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
>
> (1) was imposed in violation of law;
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
>
> (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
>
> (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

In a recent case which considers a district court's refusal to depart downward, Judge Seitz succinctly analyzed § 3742:

> We look in vain for language governing a defendant's right to appeal the denial of relief under the foregoing circumstances. The portion of the statute providing for appeals by a defendant (18 U.S.C. § 3742) simply does not authorize such an appeal. Certainly § 3742(a)(2) (incorrect application of guidelines) does not apply in the present context. Otherwise, as the government suggests, a discretionary refusal to go below the guidelines would seem also to apply to situations in which a defendant challenged an enhanced departure. Such a result would render § 3742(a)(3) largely superfluous.

---

\* Our court, in an earlier opinion, reviewed a decision not to depart downward without commenting on whether a defendant could appeal a refusal to depart. *United States v. Sheffer*, 896 F.2d 842, 845 (4th Cir.1990). The issue was not di-

rectly presented in that case; consequently, *Sheffer* does not control the discussion here. *See also United States v. McCrary*, 887 F.2d 485, 488–89 (4th Cir.1989).

Finally, although not relied on by the defendant, we do not believe that 18 U.S.C. § 3553(b) (permitting a deviation from the guidelines under certain circumstances), when read with § 3553(a) (factors to be considered in imposing a sentence) converts an unappealable exercise of discretion into an error of law that may be reviewed under § 3742(a)(1) in some amorphous circumstances. If such a result is desirable, it is for Congress to say so.

We conclude that § 3742(a) does not authorize an appeal in the present circumstances.

*Denardi,* 892 F.2d at 272 (footnote omitted).

### III

■ There is an exception to the precept that a defendant cannot appeal a refusal to depart downward. Section 3742(a)(1) provides for review of a sentence "imposed in violation of law." A defendant can appeal if this very narrow situation arises. *Franz,* 886 F.2d at 980; *Fossett,* 881 F.2d at 979; *Buenrostro,* 868 F.2d at 139. Thus, if the refusal to depart downward were based on the district court's mistaken view that it lacked the authority to depart, the defendant could appeal. *See* U.S.S.G. Ch. 5, Pt. K (listing some factors justifying departure pursuant to 18 U.S.C. § 3553(b)); *Colon,* 884 F.2d at 1553; *Fossett,* 881 F.2d at 979; *United States v. Russell,* 870 F.2d 18 (1st Cir.1989).

Bayerle contends that he may appeal because the court mistakenly believed it was without authority to depart. The record, however, refutes this contention. The court knew that it could depart. It refused because it concluded that the evidence did not justify departure.

### IV

■ Bayerle also argues that his sentence is unconstitutional. He contends that sentencing him based on the gross weight of the pharmacological drugs he prescribed violates his due process rights. The presentence report calculated the combined weight of the dilaudid and dolaphine and used the Drug Equivalency Tables set out in the commentary to § 2D1.1 to convert the total to a heroin equivalency. The report established a base offense level from the heroin equivalency in accordance with the Drug Quantity Table in § 2D1.1(c). Use of the pills' gross weight to figure Bayerle's base offense level amounts to a due process violation, we are told, because the potency of these drugs varies both with their form and the dosage of a given pill. Gross weight does not account for the difference between a 4 mg. and an 8 mg. dilaudid pill, for example, because the gross weight remains the same even though one pill has twice the potency of the other. Similarly, the equivalency table makes no adjustment for the increased potency of the drug in liquid as compared to pill form.

We have confronted and rejected this argument before in a slightly different context. In *United States v. Whitehead,* 849 F.2d 849 (4th Cir.1988), the defendant challenged the classification for sentencing purposes of cocaine "by [the] quantity of [the] contraband without regard to its purity." 849 F.2d at 859. The statute in question there, 21 U.S.C. § 841(b)(1), provided that so long as a cocaine mixture contained a "detectable amount" of cocaine, the gross weight of the mixture would be the basis for sentencing. We upheld the statute, finding the gross weight scheme rationally related to the legislative goal behind the law. 849 F.2d at 859–60; *accord United States v. Holmes,* 838 F.2d 1175, 1177–78 (11th Cir.1988).

■ The equivalency tables complained of here are simply an extension of the scheme we upheld in *Whitehead.* The commentary to § 2D1.1 states that the Commission "has used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1))" in the Drug Equivalency Tables in order to provide "conversion factors" for a host of illegal substances not explicitly treated in the statute. U.S.S.G. § 2D1.1, comment. (n. 10). A note to § 2D1.1(c) adds that "the weight of a controlled substance … refers to the entire weight of any mixture or substance

**32**

containing a *detectable amount* of the controlled substance" (emphasis added). Although the note refers to the Drug Quantity Table in 2D1.1(c), we read it to apply as well to the Drug Equivalency Tables which follow. Consequently, the equivalency tables are premised upon the same "detectable amount" standard approved in *Whitehead*. Just as we upheld the quantity-based approach in *Whitehead* for 21 U.S.C. § 841(b)(1), we uphold it in the Drug Equivalency Tables.

■ Our conclusion is not swayed by Bayerle's observation that the guidelines permit consideration of drug purity in determining a defendant's role in a drug offense. Commentary to § 2D1.1 explains that "[t]rafficking in controlled substances ... of unusually high purity may warrant an upward departure [from the guideline range] ... because [the purity may be] probative of the defendant's role or position in the chain of distribution." U.S.S.G. § 2D1.1, comment. (n. 9). Although Bayerle finds it contradictory for a sentencing court to consider drug purity there and not in the equivalency tables, we find no such difficulty. The commentary merely identifies a situation which might warrant an upward departure. It is entirely consistent with the equivalency tables. *Cf. United States v. Baker*, 883 F.2d 13, 15 (5th Cir. 1989).

### V

We dismiss Bayerle's complaint that the district court erred by not departing downward. We have no occasion to review this assignment of error on its merits because it is not appealable. In all other respects we affirm the judgment of the district court.